NEBEKER, Senior Judge,
concurring:
My colleagues correctly assess the reasonableness of both the scope and manner of obtaining buccal swab. See Maryland v. King, — U.S. -, 133 S.Ct. 1958, 1970, 186 L.Ed.2d 1 (2013) (requiring a search to “be reasonable in its scope and manner of execution”). However, I do not read King their way when the majority asserts that an additional factor “in favor of the reasonableness of the search” is the limitations placed on. the future use of the DNA. King looked at a Maryland statute allowing for the DNA collection of arres-tees at the time of booking and entry of the DNA into the Combined DNA Index System (“CODIS”), which the Court upheld as a reasonable search based upon the brief, physically harmless intrusion into the body and numerous government interests outweighing the individual’s privacy interest. Id. at 1968, 1980. The Court dismissed any concern that additional information beyond mere identification could be gathered from the non-coding portions *901 of the collected DNA; that is, the DNA did not reveal other information such as genetic traits. Id. at 1979. Because no additional information could be gathered beyond identification, the Court determined there would be no further invasion of privacy. Id. at 1980 (“In light of-the scientific and statutory safeguards, ... [there is not] a significant invasion of privacy....”). The Court did not consider whether limitations on future use of DNA evidence for identification purposes was a factor in determining the reasonableness.[1] Additional reliance on limitations to inform the reasonableness analysis is unnecessary.
We correctly consider the factors weighing on reasonableness including the inva-siveness of the buccal swab search, the search being performed in a reasonable manner, and the seriousness of the offense with society’s interest in a conviction. None of these factors support destruction or limiting use of the DNA evidence for identification thereafter. Destroying the evidence does not make the search any more or less invasive 'at the time it occurred or make the manner performed any more or less reasonable. Moreover, entering the DNA into the database will have additional salutary effects: e.g., of exonerating those wrongly accused of crimes or even identifying human remains. See id. at 1974 (furthering the “salutary effect of freeing a person wrongfully imprisoned for the same offense”).
Finally, ordering destruction or limiting the use of DNA evidence is a public policy determination to be made by the legislature. The government has not argued on appeal that these limitations are inappropriate, but we should not tacitly endorse them. There is nothing logical in limiting possible future use of evidence lawfully obtained in compliance with the constitution.

. In particular, the Court described Maryland’s statutory limitations for destroying DNA evidence when certain situations are present, id. at 1967, but the Court did not rely on the destruction of evidence in its analysis, see id. at 1979-80.